Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Counsel for Defendant Andre Brown

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>  vs.<br>ANDRE BROWN,<br><br>                Defendant. | Case No. 4:21-cr-00008-RRB-SAO<br><br>**DEFENDANT'S MOTION TO SET DETENTION HEARING FOR CONSIDERATION OF PRETRIAL RELEASE** |

Defendant Andre Brown, through counsel, Gary G. Colbath, Assistant Federal Defender, moves this Court for release pending trial. Defendant urges the Court to set this matter for a hearing sometime the week of February 8, 2021, for consideration of this motion.

At the hearing, Mr. Brown will submit a plan that includes his release to reside in Anchorage, Alaska, at the House of Transformation residential living center. He will remain there on home detention subject to all restrictions on his travel that the Court deems appropriate. Mr. Brown further agrees to be subject to GPS electronic monitoring to ensure his compliance with the home detention conditions imposed. Defendant has previously submitted an application to the House of Transformation through the United States Probation office and has been accepted to the facility.

Mr. Brown would agree to remain at the residence on restriction, leaving only with pre-authorization from pretrial services and be restricted by electronic monitoring. Transportation for case related matters can be facilitated by the Federal Defenders office, House of Transformation or Probation.

There are good reasons to release Mr. Brown.

## I. Introduction

Defendant has previously been detained by the Court under the Bail Reform Act. However, the Court has authority to review that order pursuant to 18 U.S.C. § 3142(f) and 3143. This is required in this instance given the ever-changing information developing regarding the Coronavirus ("COVID-19") pandemic, Alaska Department of Corrections' ("DOC") continued position to deny counsel all access to its facilities and in light of Defendant's medical condition. Mr. Brown's medical condition, when considered in conjunction with the pandemic, justifies release to provide him adequate access to on-going medical care. The crisis caused by the pandemic and its life or death threat to a person confined with hundreds of others in a detention facility warrant further consideration of pretrial release under these unique circumstances.

## II. Background

Since Defendant's initial detention hearing before the Court, Defendant has been moved to Anchorage Correctional Complex. The facility has current COVID-19 issues and conditions at the jail for inmates are extremely concerning. The Country is struggling with distribution of vaccines and no DOC inmates have currently been vaccinated. Even

once that occurs, the medical evidence is still limited as to whether this will prevent illness from any of the new strains for the virus circulating the Country.

The Governor of Alaska has continued to declare a public health emergency within the State and travel and local mandates remain in effect Statewide at varying levels.

### III. Miscellaneous General Order 20-12 Still Applies and its Factors apply here as follows:

#### A. Prior to Filing

(a)(1): Confer with Government: It is believed that the government, through Assistant United States Attorney Ryan Tansey continues to oppose Defendant's release.

(a)(2): Notify Probation: United States Probation has been notified of Defendant's release plan and will file an updated report regarding the plan proposed.

(a)(3): File Third-Party application: Release is proposed to a residential living center, so no third-party custodian is proposed.

(a)(4): Order for Records: Defendant's medical records have been received and will be summarized for the Court at the hearing or in the Amended PTS report. They are not filed herewith due to privacy concerns. Defendant's conditions place him at a high risk for acquiring COVID-19 and suffering more serious consequences or death from the virus than the average person. Defendant's heightened risk is clearly exacerbated by his current placement at a DOC facility where compliance with the CDC guidelines for mitigating exposure to COVID-19 is impossible.

#### B. Requirements of Motion

(b)(1): Expedited Basis: A hearing is requested for the week of February 8 to here this matter.

(b)(2): Relevant Factors: The relevant factors under 18 U.S.C. § 3143(a) and, by reference, § 3142(b) and (c), are flight risk and danger to the community. Defendant is proposing a plan which requires release to a local residential living center, on house arrest with GPS ankle monitoring. He would agree to be subject to any other conditions deemed appropriate by the Court. He will not leave the facility except to attend court, medical care, attorney visits or other activities authorized in advance by US Probation. These combined factors will mitigate any risk of flight or danger to the community.

(b)(3) Relevant Medical Conditions: Defendant has a serious health condition that severely compromises his immune system. He further has other medical conditions which make treating or recovering from COVID-19 more difficult and place him at a higher risk for serious bodily injury or death.

(b)(4): Release Plan: Defendant will reside at the identified residential center.

(b)(5): Consent to Telephonic or Video Conference Appearance: Defendant waives his right to appear in person at this bail hearing due to the pandemic concerns which have precipitated this motion, and is willing to appear via telephone or video conference.

### IV. The Bail Reform Act

Under the Bail Reform Act, the government may move for a defendant's pretrial detention if the case involves, among other offenses, "crimes of violence" or "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ." 18 U.S.C. § 3142(f)(1). This is a presumption case. The presumption of detention "places 'a limited burden of

production—not a burden of persuasion' on the defendant to 'com[e] forward with evidence that he does not pose a danger to the community or a risk of flight.'" *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) (quoting *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011)); *see United States v. Stone,* 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Moss*, 887 F.2d 333, 338 (1st Cir. 1989); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).

When the defendant meets his burden of production, it "remains a factor to be considered among those weighed by the district court" but "does not eliminate the presumption favoring detention*." Khusanov*, 731 F. App'x at 21 (quoting *English*, 629 F.3d at 319). The government bears the burden of proving by a preponderance that no condition or combination of conditions will reasonably assure the defendant's appearance and by a clear and convincing showing that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f); *see Khusanov*, 731 F. App'x at 21 (noting that the "ultimate burden" of proof remains on the government to "mak[e] a preponderance showing that the defendant poses a risk of flight and a clear and convincing showing that he presents a danger to persons or the community"); *Stone*, 608 F.3d at 945 ("As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'") (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *Moss*, 887 F.2d at 338; *Suppa*, 799 F.2d at 119; *Portes,* 786 F.2d at 764; *Alatishe,* 768 F.2d at 371.

Defendant seeks review of the Court's prior detention order, relying on 18 U.S.C. § 3145(c), which provides, in relevant part:

A person subject to detention pursuant to section 3143(a)(2) . . ., and who meets the conditions of release set forth in section 3143(a)(1) . . ., may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

Under the law of the Ninth Circuit, there is "no limit on the range of matters the district court may consider. Rather, the court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors" "exceptional reasons" exist permitting the release of a defendant subject to mandatory detention. *United States v. Garcia*, 304 F.3d 1013, 1018-19 (9th Cir. 2003). Determining whether a defendant has presented exceptional reasons under section § 3143 requires a case-by-case evaluation, and the Court's discretion is "constrained only by the language of the statute: 'exceptional reasons." *Id.* Here, Defendant asserts that the combination of the COVID-19 pandemic and the unique facts in this case present exceptional reasons to justify release.

## V. Access to Counsel

Defendant's need to assist counsel in preparing to defend this case provides an independent basis, in these unique circumstances, that also supports release. Alaska DOC has taken the position that in-person access to counsel is not essential to exercise of a person's Sixth Amendment rights and has no intention of allowing counsel actual access to individual clients whether they are pretrial detainees, presentencing detainees,

or individuals already convicted of an offense. This is both unconstitutional and simply wrong. Individuals like Andre Brown have a right to effective assistance of counsel from the inception of the case through completion of the case and at all meaningful stages. It is essential for counsel to be able to effectively assist Mr. Brown in his pretrial stages, during the plea or trial process, and through sentencing. Release to a community facility would provide access to counsel that DOC refuses to even consider which will not only allow Mr. Brown the ability to exercise his right to counsel but also will promote judicial efficiency it allowing this matter to move forward with delay associated with Mr. Brown's custody status.

The Bail Reform Act does not specifically address the extent to which pretrial detention may interfere with the attorney-client relationship. In ordinary times, the Court might not address it either. But these are not ordinary times. The current public health crisis has upended the world as we know it. It has dramatically altered and limited our interactions with family, friends, co-workers, and members of our community. It has undoubtedly similarly altered and limited all criminal defendant's interaction with their attorney—especially here since Defendant is detained pending trial.

There are legitimate concerns over confidentiality during legal phone calls. Alaska DOC has a proven record of recording and listening to attorney-client phone calls. Regardless, review of documents is nearly impossible in a phone call setting and privacy on an inmate's side of the call is almost impossible as phones are located in "open" areas of most cellblocks. Alaska DOC limitations on contact pose myriad challenges for the lawyer, the defendant, and the attorney client relationship. The Court should consider the

DOC's intransigent position on attorney access in determining alternative solutions to protecting defendants' Constitutional Rights. Indeed, consideration is warranted here.

Section 3142(i) does not define "compelling reason," and the Ninth Circuit has yet to interpret this statutory language. However, as courts across the country have recognized, the global health crisis posed by COVID-19 necessitates informed, speedy, and preemptive action to reduce the risk of infection, illness, and death to prisoners and prison officials alike. *See*, *Xochihua-Jaimes v. Barr*, No. 18-71460, ECF No. 53 (9th Cir. Mar. 23, 2020) (sua sponte ordering release of non-citizen from immigration detention center "[i]n light of the rapidly escalating public health crisis, which public health authorities predict will especially impact immigration detention centers."); *United States v. Perez,* No. 19- cr-00297, ECF No. 62 (S.D.N.Y. Mar. 19, 2020) (finding that the defendant's heightened risk to COVID-19 complications constitutes a compelling reason for release under § 3142(i)); *United States v. Barkman*, No. 19-cr-0052, 2020 U.S. Dist. LEXIS 45628, at *11 (D. Nev. Mar. 17, 2020) (granting emergency relief amending probation order to delay confinement for thirty days because of risk of infection to both Defendant and others in jail). Under any possible interpretation of Section 3142(i)'s language, current events and DOC's inability to handle a pandemic outbreak constitute a compelling reason for release under § 3142(i).

Here, both Probation and the government have raised concerns about the charged offense and Defendant's criminal history with respect to considering release. The offense is no doubt a serious one. However, Defendant is not seeking release into the community at large nor under circumstances where his interactions with others will not be monitored.

With respect to his criminal history, the information relied on by Probation and the government focuses on older conduct without any acknowledgement of Mr. Brown's compliant and favorable behavior over the last several years. Mr. Brown's last conviction, either state or federal arose of a 2010 offense where he was convicted of an Alaska state Misconduct Involving a Controlled Substance in the Third degree. On that offense, Brown was sentenced to serve 6 years imprisonment. Brown released from prison to the North Star Center in Fairbanks in late 2015. After successfully completing a term at the halfway house he released to electronic monitoring in March of 2016 and was supervised with no revocations until November of 2017 (almost 18 months). Thereafter, Brown completed a term of supervised parole from November 2017 through November of 2018, again with revocation or major issues. Thus, despite his older contrary history, Brown has matured and more recently demonstrated a multi-year ability to abide by terms and conditions of supervision and remain compliant with reporting requirements as ordered. The Court must consider this conduct if Brown's older conduct is considered at all.

Finally, the reality is that Mr. Brown is a medially challenged, medication dependent person with no financial resources nor ability to flee in any respect. Indeed, to this day, law enforcement has his phones, wallet, identification and what little money he had when he was last free. He relies on the state to provide his medically necessary medication. He risks not only further legal consequences by running but literally his life if he would choose to leave without having a source to continue to take his medication. If released, Brown simply wants to communicate with his children, attend to his health and medical conditions, work with counsel to resolve the charges herein as favorably as

possible, and salvage what time he has remaining to live. He has no intention of making any of his circumstances, medical or legal, worse by engaging in any criminal activity or flee even for a brief period as either will likely ensure a future life sentence for him.

Given the broad, restrictive and over-compensating conditions proposed under this release plan, the risk of flight is all but non-existent and the risk of danger is sufficiently mitigated (not eliminated, but the law does not require that) to allow release during the continuing global pandemic.

## VI. Conclusion

For all the reasons set forth herein above, the Court should order Defendant's release as proposed under the supervision of Pretrial Services upon strictly fashioned terms and conditions. Defendant seeks his release to the House of Transformation, with GPS monitoring, on house arrest, with drug testing and any other conditions the Court deems necessary. This will allow him to avoid further exposure to COVID-19 while giving him proper access to counsel to defend this matter.

Defendant understands that based on its prior arguments made during these proceedings, the government opposes Defendant's release.

DATED at Anchorage, Alaska this 2nd day of February, 2021.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on February 2, 2021. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system. /s/ Gary G. Colbath

/s/ Gary G. Colbath
Gary G. Colbath
Assistant Federal Defender

United States v. Andre Brown
Case No. court no                                                                 Page 10